LAWRENCE H. SCHOENBACH, ESQ.
Law Offices of Lawrence H. Schoenbach
111 Broadway, Suite 901
New York, New York 10006

*Attorney for ROYAL INDUSTRIES INTERNATIONAL, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

ROYAL INDUSTRIES INTERNATIONAL, LLC

                              Plaintiff,

        -   Against –                          **VERIFIED COMPLAINT AND**
                                                    **JURY DEMAND**

EQUATION SOLUTIONS, INC., FRANCIS
REQUIZO ALVAREZ personally and as a member
of EQUATION SOLUTIONS, INC., RODIN
MOORI HEXIR personally and as a member of
EQUATION SOLUTIONS, INC.,
and others known and unknown.

                              Defendants.

_____

    Plaintiff ROYAL INDUSTRIES INTERNATIONAL, LLC alleges the following against

defendants EQUATION SOLUTIONS INC., FRANCIS REQUIZO ALVAREZ personally and

as a member of EQUATION SOLUTIONS, INC., RODIN MOORI HEXIR personally and as

a member of EQUATION SOLUTIONS, INC. and others known and unknown:

## JURISDICTION

*Subject Matter Jurisdiction*

Federal Question Jurisdiction

    1.      This court has subject matter jurisdiction of the within action pursuant to

18 United States Code §§ 1962 and 1964(c) (Racketeer Influenced and Corrupt

Organizations, hereinafter "RICO"). Plaintiff relies on Federal Question jurisdiction as its primary basis of subject matter jurisdiction.

Diversity of Citizenship Jurisdiction

2.     However, this court also has subject matter jurisdiction of the within action pursuant to 28 United States Code § 1332 (Diversity of Citizenship).

3.     Specifically, with regard to diversity of citizenship:

   a. Plaintiff ROYAL INDUSTRIES INTERNATIONAL, LLC is a limited liability company duly formed and domiciled in the State of Nevada;

   b. Defendant EQUATION SOLUTIONS INC. is, upon information and belief, a corporation duly formed and registered in the Republic of the Philippines;

   c. Defendant FRANCIS REQUIZO ALVAREZ is an individual who is a domiciliary and citizen of the Republic of the Philippines. He is a principal of ESI and, along with RODIN MOORI HEXIR, ESI's Administrator; and

   d. Defendant RODIN MOORI HEXIR is, upon information and belief, a domiciliary of Great Britain and a citizen of the Netherlands. He is believed to be a principal of ESI and is ESI's Managing Member and Administrator. *See* ¶ 7 *infra.*

   *Personal Jurisdiction*

4.     This court has personal jurisdiction over the defendants because defendants have committed multiple acts of fraud by wire, radio or television and by the use of the United States' mails, including in, to and/or from the Southern District of New York. Additionally, defendants have accepted personal and corporate responsibility under a contract with plaintiff. *See* Exhibit D (first paragraph).

5.      Plaintiff has suffered a loss due to defendants' wrongful conduct as alleged herein of at least Five Billion Four Hundred Million ($5,400,000,000.00 USD) dollars, clearly an amount in excess of the Seventy-Five Thousand ($75,000.00 USD) dollar jurisdictional requirement. Plaintiff's actual out-of-pocket losses near One Million ($1,000,000.00 USD) dollars.

*Venue*

6.      Venue is properly in the United States District Court for the Southern District of New York, pursuant to Title 18 U.S.C. § 1965(a)(1), because Plaintiff was registered to do business in New York County and many of the activities and affairs of defendant, including wire transfers of funds from plaintiff to defendants, occurred in or from New York (Manhattan). Venue is also proper in the Southern District of New York because, pursuant to Title 28 United States Code § 1391(a)(2), a substantial part of the events or omissions giving rise to the claims alleged occurred in New York (Manhattan).

## THE PARTIES

7.      ROYAL INDUSTRIES INTERNATIONAL, LLC ("Royal") is a limited liability company that is duly registered in the State of Nevada. It does business in a number of states, including New York. ROYAL has a designated office located at 401 Ryland Street Suite 200-A, Reno, Nevada 89502.

8.      EQUATION SOLUTIONS INC., ("ESI") is, upon information and belief, a corporation duly formed in the Republic of the Philippines. ESI has a designated office located at 544 Blue Diamond Building, Quezon Boulevard, Quezon City, Philippines.

9.      FRANCIS REQUIZO ALVEREZ ("Alvarez") is a citizen of the Republic of the Philippines. He is, upon information and belief, an individual currently residing in Manila, Philippines. Alvarez is the President of ESI. ALVAREZ's last known address is

ESI's designated office located 544 Blue Diamond Building, Quezon Boulevard, Quezon City, Philippines.

10.     RODIN MOORI HEXIR ("Hexir") is, upon information and belief, a citizen of the Netherlands. He is an individual who, upon information and belief, is the Managing Member of ESI. HEXIR's last known address is ESI's designated office located at 544 Blue Diamond Building, Quezon Boulevard, Quezon City, Philippines.

11.     Collectively, ROYAL, ALVEREZ, HEXIR and ESI may be referred to hereafter as "the Parties."

## ALLEGATIONS OF FACT

### *Summary of the Case*

12.     This action concerns, at its core, a breach of contract by defendants. Because of the breach of contract plaintiff was severely harmed as it lost a financial asset worth billions of dollars.

13.     The contract between the parties contemplated a one-year lease of a Freddie Mac Bond (the "Bond" or "Bond C," *see infra*) with a face amount of Nine Billion ($9,000,000,000.00 USD) dollars. In return, among other things, plaintiff was to pay an Administrative Fee of Fifty Thousand (€50,000.00 EUR) euro to cover ESI's administrative costs.

14.     In return for plaintiff's payment defendants would transfer the Bond to plaintiff's HSBC brokerage account in New York. Both ESI and Royal would then participate in leveraging the Bond and splitting the proceeds of that leverage.

15.     Specifically, the parties agreed that the Freddie Mac Bond would be utilized by plaintiff as collateral for a line of credit equal to sixty percent (60%) of the face value of the instrument.

16.     Sixty percent of the face amount of Bond C is Five Billion Four Hundred Million ($5,400,000,000.00 USD) dollars, the amount plaintiff rightly expected to obtain from its HSBC bankers in New York – once the Freddie Mac Bond was lodged in plaintiff's account at HSBC.

17.     ALVEREZ was expected to participate in ROYAL's anticipated line of credit in a 50/50 split of the proceeds of the line of credit.

18.     As a way of protecting ESI's financial instrument, the parties agreed that ALVAREZ would retain control (but not custody) over the instrument once it was transferred to ROYAL's brokerage account in New York.

19.     However, instead of transferring Bond C to plaintiff, defendants made numerous fraudulent representations about the contract between the parties and wrongly demanded that plaintiff pay significant additional funds -- beyond what was required in the contract -- totaling nearly one million ($1,000,000.00 USD) dollars.

20.     These additional funds were made under threat by defendants that unless these funds were paid defendants would not the transfer the Freddie Mac Bond.

_The Facts_

21.     On or about December 31, 2015 ESI entered into an Agreement with Royal by which ESI would transfer to Royal a United States Treasury bond bearing ISIN number US4042Q1AA55 ("Bond A") then in ESI's possession, custody and control. Subsequently, with the consent of the parties, that bond substituted for a different bond bearing ISIN number US298785EA05 ("Bond B"). Thereafter, again with the consent of the parties, Bond B was substituted for a bond bearing ISIN number US31283H4Z55 ("Bond C" or "the Bond" or "Freddie Mac Bond" or "the Security"). It is Bond C that is due and owing to plaintiff. Bond C is a Freddie Mac Bond with a face amount of Nine Billion ($9,000,000,000.00 USD) dollars.

22.   The transfer of Bond C was conditioned upon plaintiff performing two conditions precedent to the transfer:

      a.    The payment of Fifty Thousand euro (€50,000.00) to cover all costs and expenses arising from the transfer of the Freddie Mac Bond; and

      b.    Royal's opening of a securities account at a major financial institution in the United States; and

      c.    Upon transfer of Bond C to defendant ALVAREZ would control one-half of the beneficial interest of the face amount of the bond.

23.   In September 2016, ALVAREZ, personally <u>and</u> on behalf of ESI, entered into a Master Funding Agreement with Royal whereby ESI/ALVAREZ agreed to transfer Bond C arising under the ESI/Royal Agreement, to Royal, along with Five Million ($5,000,000.00 USD) dollars, as part of ALVAREZ's capital contribution to Royal. (*See* Exhibit B, the "Master Funding Agreement").

24.   Pursuant to Article 16.1(g) of the duly signed and executed Master Funding Agreement, Alvarez granted Royal lien rights on all of ALVAREZ's assets, including but not limited to all assets ALVAREZ held in "any  business entity, any stock or share certificates, property, and any bank accounts inside of which Mr. Alvarez has direct signatory control. *See* Exhibit B Article 16.1(g).

25.   On November 26, 2016, RODIN HEXIR personally bound himself and ESI to deliver the Security when he advanced a signed formal commitment to Royal bearing HEXIR'S signature. As ESI's Administrator and by his own agreement to be "personally bound" to the contract, HEXIR agreed to perform under the terms of the contract. *See* Exhibits D and F.

26.   By June 2016, Royal had fulfilled all conditions arising from the ESI/Royal Agreement and the Master Funding Agreement.

27.     However, beginning in June 2016 and over the course of multiple occurrences through (at least) March 2017, ALVAREZ, HEXIR and ESI began making further monetary demands, supposedly for *additional* "administrative fees," or other claimed "expenses" totaling over Eight Hundred Ninety-Six Thousand Three Hundred Twenty-Nine United States ($896,329.00 USD) dollars to cover claimed additional expenses that ESI said were needed to pay the costs to hold, maintain, and eventually transfer the Security to Royal. *See* Exhibit C.

28.     Defendants' demands were outside the terms of the ESI/Royal Agreement and the Master Funding Agreement. Nonetheless, Royal paid the fees to ALVAREZ and ESI because Royal was told Royal was "required" to make the payments -- else the Freddie Mac Bond would not be transferred to plaintiffs.

29.     With ALVAREZ's, HEXIR's and ESI's written commitment to transfer Security C upon sending of said fees, plaintiffs agreed, as they had done previously, to send the fees to defendants. *See* Exhibit D.

30.     ESI, ALVAREZ and HEXIR assured ROYAL that upon ROYAL settling such administrative fees that ESI would complete the transfer of Security C from ESI's Citibank Hong Kong Account to Royal's HSBC New York Securities Account. HEXIR, in fact, committed to make the transfer with "personal and corporate responsibility." *See* Exhibit D.

31.     On November 22, 2016, ESI sent Royal a SWIFT message confirming the initiation of the transfer of Security C from ESI's Citibank New York Account to ESI's Citibank Hong Kong Brokerage Account for further credit to Royal. *See* Exhibit E.

32.     Notwithstanding the SWIFT message, the Freddie Mac Bond was not transferred to plaintiff's HSBC account.

33.     Again, after defendants paid all of the additional fees demanded of them by March 2017, ESI promised to transfer Bond C to plaintiff. It never did.

34.    Thereafter, in a letter dated June 20, 2017, ESI asserted that ESI required (as another condition to the transfer of Bond C) *another* arbitrary cash fee in an amount equal to six and one-half percent, 6.5%, of the face value of the Security, along with One Hundred Fourteen Thousand ($114,000.00 USD) dollars, ostensibly to cover travel expenses for HEXIR to travel to his bank in Hong Kong to make the transfer. *See* Exhibit F.

35.    Royal continually complained to ALVAREZ, HEXIR and ESI that these additional fees and/or conditions were not a part of the contract between plaintiff and defendants and demanded that Bond C be transferred to plaintiff's bank in New York pursuant to the terms of the contract. In response, defendants told plaintiff to, in effect, "pay up" or the Security would never be transferred. Plaintiff was, in effect, being held hostage by defendants.

36.    Plaintiff has fulfilled all its obligations arising from the ESI/Royal contract and Master Funding Agreement with ESI. Royal is currently owed Security C from the Defendants (in the condition it would have been had the transfer been made timely made), and has suffered *actual*, out-of-pocket losses and damages in an amount greater than Eight Hundred Fifty Thousand ($850,000.00 USD) dollars.

37.    Pursuant to the terms of the contract between the Parties in the event of a breach of contract the Parties were required to seek its remedy through mediation and arbitration.

38.    In or about November 2017, Plaintiff filed a formal demand of defendants for mediation and arbitration pursuant to the terms of the contract. Defendants failed to respond to plaintiff's demand for mediation or arbitration. *See* Exhibits G and H.

       *The Racketeering Conspiracy*

39.    ESI is a racketeering enterprise as that term is defined by the United States Code. *See* 18 U.S.C. § 1961(4). Specifically, ESI utilized itself as an entity by which it

associated with itself and its members (including defendants ALVAREZ and HEXIR) to conduct a pattern of racketeering activity.

40.    ESI's actions, including its nonperformance under the contract and its use of implicit and explicit threats to withhold the transfer of Bond C, notwithstanding the terms of the contract, is a pattern of racketeering as that term is defined by the United States Code. *See* 18 U.S.C. § 1961(5).

41.    Specifically, ESI has engaged in, *inter alia*, mail fraud and wire fraud to wrongly derive immense financial benefit and monetary gain from plaintiff. *See* Title 18 United States Code, § 1961(1) (Section 1341 (relating to mail fraud) and Section 1343 (relating to wire fraud).

42.    ESI is a corporation filed with the Securities and Exchange Commission of the Philippines and as such is an Enterprise as defined by statute. Specifically, ESI is a ". . . partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

43.    Utilizing ESI as its enterprise, ALVAREZ and HEXIR, and others as yet unknown, utilized the company to commit mail fraud, wire fraud, and extortion to wrongfully acquire nearly a million dollars from plaintiff – and to retain for itself the financial instrument (Bond C) worth billions of dollars that should have been transferred to plaintiff for plaintiff's use and enjoyment.

    *The Predicate Acts*

44.    Beginning in June 2016 defendants, after plaintiff had already paid all sums required of it under the contract between the parties, ESI made a series of escalating monetary demands, as unwarranted and improper conditions precedent to defendants' transfer of Bond C to plaintiff. *See* Exhibit C. These demands were all outside the terms of the contract between the parties.

45.     Plaintiff had no choice but to pay these additional amounts. Plaintiff was told by defendant that if plaintiff failed to make these payments defendants would <u>never</u> transfer Bond C to plaintiff's account.

46.     Defendants individually and collectively, committed the following Acts of Racketeering ("PREDICATE ACTS") by and through ESI, the Racketeering Activity:

a.  PREDICATE ACT # 1:  On March 22, 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Twenty-Five Hundred ($2,500.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

b.  PREDICATE ACT # 2:  On March 29, 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Nine Thousand Nine Hundred Ninety-Five ($9,995.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

c.  PREDICATE ACT # 3:   On April 1, 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Nine Thousand Nine Hundred Ninety-Five ($9,995.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

d.  PREDICATE ACT # 4:   On April 5, 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Nine Thousand Nine Hundred Ninety-Five ($9,995.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

e.  PREDICATE ACT # 5:   On May 4, 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Fifteen Thousand ($15,000.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

f.  PREDICATE ACT # 6:  In June 2016, pursuant to defendants' demand, plaintiff sent to defendants the sum of Twenty Thousand ($20,000.00 USD) dollars via wire transfer from plaintiff's bank in Arizona to defendants' bank in the Philippines, all the while never intending to transfer Bond C;

g.  PREDICATE ACT # 7:  In September 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Two Thousand ($2,000.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

h.  PREDICATE ACT # 8:  Between September 10, 2016 and September 20, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Three Thousand ($3,000.00 USD) dollars;

i.  PREDICATE ACT # 9:  On September 21, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of One Thousand Seven Hundred ($1,700.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

j.  PREDICATE ACT # 10:  On September 22, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Seven Hundred ($700.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

k.  PREDICATE ACT # 11:  Also, on September 22, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Two Thousand ($2,000.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

l.  PREDICATE ACT # 12:  On October 21, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of One Thousand One Hundred ($1,100.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

m.  PREDICATE ACT # 13:  On October 28, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Five Hundred ($500.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

n.  PREDICATE ACT # 14:  On November 2, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Two Thousand ($2,000.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

o.  PREDICATE ACT # 15:  Also, on November 2, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of One Thousand Nine Hundred Ninety-Nine ($1,999.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

p.  PREDICATE ACT # 16:  On November 3, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Six Hundred Seventy-Five ($675.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

q.  PREDICATE ACT # 17:  Also, on November 3, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum

of Two Thousand ($2,000.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

r.  PREDICATE ACT # 18:  Also, on November 3, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Five Thousand ($5,000.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

s.  PREDICATE ACT # 19:  On November 15, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Two Hundred Fifteen ($215.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

t.  PREDICATE ACT # 20:  On November 16, 2016 HEXIR, on behalf of ESI, sent a letter to plaintiff via electronic mail advising that "I/We Equation Solution Inc. confirm with Full Corporate and personal responsibility, our commitment to cause deliver to your account of the following securities:  Freddie Mac, ISIN:  US31283H4Z55; Amount:  9 Billion Euro; Rate 60%. HEXIR

u.  PREDICATE ACT # 21:  On November 19, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the sum of Three Hundred Fifteen ($300.00 USD) dollars via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines;

v.  PREDICATE ACT # 22:  On November 21, 2016, pursuant to defendants' extortionate demand, plaintiff sent to defendants the following sums, each via Money Gram/Western Union from plaintiff in Arizona to defendant ALVAREZ/ESI in the Philippines:

    1.  PREDICATE ACT # 23:  Two Thousand ($2,000.00 USD) dollars;

    2.  PREDICATE ACT # 24:  One Thousand Nine Hundred Ninety-Nine ($1,999.00 USD) dollars;

    3.  PREDICATE ACT # 25:  Five Hundred ($500.00 USD) dollars;

    4.  PREDICATE ACT # 26:  One Thousand Nine Hundred Ninety-Nine ($1,999.00 USD) dollars;

    5.  PREDICATE ACT # 27:  Four Thousand One Hundred Thirty-Seven ($4,137.95 USD) dollars and 95/100 cents; and

    6.  PREDICATE ACT # 28:  Five Thousand ($2,000.00 USD) dollars;

w.  PREDICATE ACT # 29:  On or about December 27, 2016, in a telephone conference between ALVAREZ and several of plaintiff's partners, ALVAREZ demanded the payment of Two Hundred Forty Thousand ($240,000.00 USD) dollars in order to complete the transfer of the Security from defendants to plaintiff. ALVAREZ advised that if the funds were not paid the transfer of Bond C would not be made.

x.  PREDICATE ACT # 30:  On December 30, 2016 plaintiff paid via electronic wire transfer from its New York attorney's bank account to ALVAREZ's account in Hong Kong the sum of Two Hundred Ten Thousand ($210,000.00 USD) dollars.

y.  PREDICATE ACT # 31:  Also, on December 30, 2016 plaintiff paid to ALVAREZ/ESI via a series of Western Union transfers the sum of Thirty Thousand ($30,000.00 USD) dollars, thereby paying the total sum of $240,000.00 demanded of it by ESI, ALVAREZ and HEXIR.

z.  PREDICATE ACT # 32:  In or about February 2017 ALVAREZ and HEXIR, utilizing the telephone and electronic mail, again demanded another payment of plaintiff in order to have ESI transfer the instrument. This time defendants demanded and plaintiff paid the sum of Three Hundred Thousand ($300,000.00 USD) dollars. The money was paid via wire transfer from plaintiff's New York attorney's bank account to defendants' account in Hong Kong.

aa. PREDICATE ACT # 33:  In or about March 2017, utilizing the telephone and electronic mail, ALVAREZ and HEXIR demanded an additional Two Hundred Thousand ($200,000.00 USD) dollars. Again, as before, plaintiff paid the sum demanded of it via wire transfer from plaintiff's attorney's New York's bank account to defendants' account in Hong Kong.

bb. PREDICATE ACT # 34:  Following the payment of this last $200,000.00 payment, in April 2016, HEXIR, on behalf of ESI, sent to plaintiff an electronic mail message agreeing to transfer Bond C to plaintiff's New York brokerage account -- but then never did so.

cc. PREDICATE ACT # 35:  Thereafter, on June 20, 2017, ALVAREZ and HEXIR on behalf of ESI sent to plaintiff a letter (*see* Exhibit F) demanding *another* payment of One Hundred Fourteen Thousand ($114,000.00 USD) "before we proceed to Hong Kong for the final transfer [of Bond C]."

47.  Plaintiff refused to send any additional funds, instead serving upon defendants a Notice of Mediation dated September 13, 2017. *See* Exhibit G.

48.  Defendants ignored the Notice of Mediation. Defendants filed no opposition to the Notice and never appeared for the mediation.

49.     Consistent with the terms of the contract, plaintiff thereafter sent to defendants a Notice of Binding Arbitration, dated November 30, 2017. *See* Exhibit H. As with the Notice of Mediation, defendants ignored the notice and never appeared or filed any opposition to the Notice of Arbitration.

### FIRST CAUSE OF ACTION

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RACKETEERING") DEFENDANTS CONDUCTED THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF TITLE 18 U.S.C. § 1962

50.     Plaintiff re-alleges and re-incorporates herein by reference the allegations previously set forth herein.

51.     Defendants ESI, ALVAREZ and HEXIR conducted the affairs of ESI through a pattern of racketeering activity in violation of Title 18, United States Code, § 1962(c).

52.     Beginning from at least in or about 2015 and continuing through the filing of the within complaint, ESI, ALVAREZ and HEXIR, along with others known and unknown, formed an association-in-fact Enterprise, known herein as ESI, within the meaning of Title 18, United States Code, § 1961(4).

53.     Beginning from at least in or about 2015 and continuing through the filing of the within complaint, the Enterprise engaged in and conducted activities that affected interstate and foreign commerce, in violation of Title 18, United States Code, § 1962(c).

54.     Defendants, individually and collectively, formed the Enterprise to execute and to attempt to execute a scheme to defraud ROYAL of money and property, in violation of Title 18, United States Code, § 1962(c).

55.     Beginning from at least in or about 2015 and continuing through the filing of the within complaint, ESI, ALVAREZ and HEXIR, along with others known and unknown, were employed by or were associated-in-fact with the Enterprise.

56.     Collectively, defendants have, and continue to have, knowingly and intentionally, conducted the activities of the Enterprise, directly or indirectly, through a pattern of racketeering activity consisting of numerous acts of racketeering (*see, e.g.* ¶ 44, *supra*).

57.     Both ALVAREZ and HEXIR are officers or persons in control of ESI and thus, have a direct and material part in the operation and management of the enterprise. *See e.g.* Exhibits A, D and E.

58.     Further, both ALVAREZ and HEXIR knowingly implemented the enterprise's decisions and each were indispensable to achieving the enterprise's goal.

59.     Each defendant attempted to benefit, and did benefit, from the activity of their employees and agents, and thus, were active participants in the racketeering scheme.

60.     The actions of all defendants include multiple, related acts in violation of the following provisions of the United States Code:  Mail Fraud (18 U.S.C. § 1341); Wire Fraud (18 U.S.C. § 1343); Travel Act (18 U.S.C. § 1952; and the Hobbs Act (18 U.S.C. § 1951. Defendants' ultimate goal was to defraud plaintiff.

61.     Specifically:

      a.  Mail Fraud (18 U.S.C. § 1341):  On or about the dates indicated throughout this complaint, defendants and/or their employees and/or agents acting on their behalf, aided and abetted by each other, used the United States mails and/or private or commercial interstate carriers in furtherance of a scheme to defraud ROYAL of money and

property in violation of 18 U.S.C. § 1341, and 18 U.S.C. § 2 as described throughout the complaint.

b. <u>Wire Fraud</u> (18 U.S.C. § 1343):  On or about the dates indicated throughout this complaint, defendants and their employees and/or agents acting on their behalf, aided and abetted by each other, used interstate wires in furtherance of a scheme to defraud ROYAL of money and property in violation of 18 U.S.C. § 1343, and 18 U.S.C. § 2 as described throughout the complaint.

c. <u>Travel Act</u> (18 U.S.C. § 1952):  On or about the dates indicated throughout this complaint, defendants and their employees and/or agents acting on their behalf, aided and abetted by each other, traveled internationally in furtherance of a scheme to defraud ROYAL of money and property in violation of 18 U.S.C. §§ 1341 and 1343, and 18 U.S.C. § 2 as described throughout the complaint.

d. <u>Hobbs Act</u> (18 U.S.C. § 1951):  On or about the dates indicated throughout this complaint, defendants and their employees and/or agents acting on their behalf, aided and abetted by each other, traveled internationally and took other actions in furtherance of a scheme to extort and rob ROYAL of money and property in violation of 18 U.S.C. §§ 1341, 1343, 1951 and 18 U.S.C. § 2 as described throughout the complaint.

62.   ROYAL has been injured in its business or property as a direct and proximate result of defendants' violations of 18 U.S.C. § 1962(c), including injury by reason the predicate acts (*see* ¶¶ 45(a)-(cc)) constituting the pattern of racketeering activity.

63.    Defendants' wrongful conduct affected interstate commerce because plaintiff was unable to complete, among other things, state, federal and/or international contracts due to the defendants' actions.

64.    As a result of defendants' wrongful conduct in participating in the affairs of a racketeering enterprise ROYAL has suffered substantial damage in an amount not less than Five Billion Four Hundred ($5,400,000,000.00 USD) million dollars.

65.    Pursuant to 18 U.S.C. ¶ 1964(c) ROYAL is entitled to recover treble damages for both is general and special compensatory damages, plus interest, costs and attorney's fees incurred by reason of defendants' violation of 18 U.S.C. ¶ 1962(c).

**WHEREFORE**, ROYAL demands judgment against each of the defendants, jointly and severally, to recover treble damages for its general and special compensatory damages, plus interest, costs and attorney's fees, by reason of defendants' violations of 18 U.S.C. ¶ 1962(d).


### SECOND CAUSE OF ACTION

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RACKETEERING")**
**CONSPIRACY TO CONDUCT THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF TITLE 18 U.S.C. § 1962**

66.    Plaintiff re-alleges and re-incorporates herein by reference the allegations previously set forth herein.

67.    Beginning on or about 2015, and continuing through the time of filing in this Complaint, ESI, ALVAREZ, AND HEXIR and others unknown and unknown, being persons employed by and associated with the Enterprise, did unlawfully, knowingly and intentionally conspire, combine, confederate and agree together to conduct of the affairs of the Enterprise, which was engaged and involved in the activities,

which affected interstate and foreign commerce, through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

68.     Each Defendant agreed that at least (2) two acts of racketeering activity would be committed by a member of the conspiracy in furtherance of the Enterprise.

69.     It was part of the conspiracy that Defendants and their co-conspirators would commit numerous acts of racketeering activity in the conduct of the affairs of the Enterprise, including but not limited to, the acts of racketeering set forth herein. The pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5) includes multiple, repeated acts of:

   a.  Mail Fraud, 18 U.S.C. §1341;

   b.  Wire Fraud, 18 U.S.C. §1343;

   c.  Travel Act, 18 U.S.C. §1952; and

   d.  Hobbs Act, 18 U.S.C. §1951.

70.     In furtherance of this unlawful conspiracy, and to affect its objectives, Defendants committed numerous overt acts, including but not limited to those set forth in throughout this Complaint.

71.     ROYAL has been injured in its business or property by reason of Defendants' violations of 18 U.S.C. §1962(d) including injury by reason of the predicate acts constituting the pattern of racketeering activity.

72.     As a result of the conspiracies between and among all of the defendants to violate 18 U.S.C. §1962(c) ROYAL has suffered substantial damage in an amount not less than Five Billion Four Hundred Million ($5,400,000,000.00 USD) dollars.

73.     Pursuant to 18 U.S.C. §1964(c), ROYAL is entitled to recover treble damages for both its general and special compensatory damages, plus interest, costs and attorney's fees, by reason of defendants' violations of 18 U.S.C. §1962(d).

74.    **WHEREFORE**, ROYAL demands judgment against each of the Defendants, jointly and severally, to recover treble damages for its general and special compensatory damages, plus interest, costs and attorney's fees.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

75.    Plaintiff re-alleges and re-incorporates herein by reference the allegations previously set forth herein.

76.    On or about December 31, 2015 plaintiff and defendants entered into a Global Master Securities Lending and Borrowing Agreement, Second Amendment ("Agreement" or "Contract"). *See* Exhibit A.

77.    The Agreement was duly signed and executed by ALVAREZ on behalf of ESI; and Mark Segovia and Blake Kelley, both the authorized representatives of ROYAL INDUSTRIES INTERNATIONAL, LLC.

78.    The terms of that Agreement obligated defendants to provide [Bond C] to plaintiff and thus, "acquire [Bond C] from [defendants] for the purpose of facilitating investment activity in the interest of raising capital for commercial and humanitarian projects.

79.    The terms of the Agreement also required plaintiff to pay to ESI the sum of Fifty Thousand (€50,000.00 EUR) euro as "Administrative Fees" due to defendant ESI.

80.    Once the Administrative fee was paid ESI was obligated to:

    a.   "make [Bond C] available to plaintiff;"

    b.   Open an account for the purpose of receiving [Bond C]; and

    c.   Transfer [Bond C] within three (3) banking days of the account opening.

81.    Following execution of the Agreement plaintiff paid to defendant the sum of Fifty Thousand (€50,000.00 EUR) euro, consistent with its obligations under the Contract. Payment of these funds was accomplished in or about June 2016.

82.     Further, pursuant to its obligations under the Contract, in or about November 2016 plaintiff opened a brokerage account at HSBC New York for the sole purpose of receiving [Bond C] into the account.

83.     Following plaintiff's having met all of its obligations under the contract defendants refused to transfer [Bond C] to plaintiff's brokerage account in New York.

84.     Defendants' breached the contract between the parties without legal right or cause.

85.     Over the course of the following year, through June 2017, defendants continued to demand additional fees as a condition precedent to the transfer of [Bond C]. None of these "conditions" were part of the contract between the parties.

86.     Plaintiff made out-of-pocket payments to defendants totaling nearly One Million ($1,000,000.00 USD) dollars -- beyond that which was due under the contract -- pursuant to defendants' extortionate demands for additional monies in order to transfer Bond C.

87.     **WHEREFORE**, plaintiff demands judgment against defendants, jointly and severally, for damages of at least One Million ($1,000,000.00 USD) dollars for plaintiff's direct out-of-pocket losses, plus an award of Five Billion Four Hundred ($5,400,000,000.00 USD) million dollars, resulting from defendants' breach of contract, an award of attorney's fees consistent with the terms of the Agreement between the parties and for such other and further relief this Honorable Court deems just and proper.


Dated:      New York, New York
            June 4, 2018


                          Respectfully submitted,

                          LAW OFFICES OF
                          LAWRENCE H. SCHOENBACH

By:   _____
      Lawrence Schoenbach, Esq. (LS8497)
      *Attorney for Plaintiff*