**Exhibit A**

**[GLOBAL MASTER SECURITIES AGREEMENT]**

## Global Master Securities Lending and Borrowing Agreement
## Second Amendment

This Global Master Securities Lending and Borrowing Agreement Second Amendment, hereinafter the "Amendment" is made and entered into this 31st day of December, 2015, by and among EQUATION SOLUTIONS INC, a corporation organized under the laws of the Philippines, acting through a Designated Office at 544 Blue Diamond Building, Quezon Boulevard, Quezon City, hereinafter referred to as "Party A", ROYAL INDUSTRIES INTERNATIONAL, LLC organized under the laws of Nevada, USA, acting through a Designated Office at 401 Ryland Street, Suite 200-A Reno, Nevada 89502, or assigns, hereinafter referred to as "Party B". The Party A and Party B have collective reference hereinafter as the "Parties".

Whereas, Party A and the Party B have entered into a Global Master Securities Lending and Borrowing Agreement, bearing the date of December 4th, 2015, hereinafter the "Agreement", by and among Party A and the Party B; and

Whereas, the Parties desire to amend the Agreement, as set forth below.

Now, therefore, in accordance with the terms of the Agreement and in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Agreement is hereby amended as follows:

### Global Master Securities Investment Agreement
This Agreement issuance is in respect to ISO 15022
Agreement Number: ESI.RII.1B.12042015

**Between**

EQUATION SOLUTION INC, a corporation organized under the laws of the Philippines, acting through a Designated Office at 544 Blue Diamond Building, Quezon Boulevard, Quezon City, hereinafter referred to as "Party A"

And

ROYAL INDUSTRIES INTERNATIONAL, LLC organized under the laws of Nevada, USA, acting through a Designated Office at 401 Ryland Street, Suite 200-A Reno, Nevada 89502, or assigns, hereinafter referred to as "Party B".

The Party A and Party B have collective reference hereinafter as the "Parties". This Global Master Securities Investment Agreement is referred to herein as the "Agreement".

## Article 1
### Details of the Securities

(a) The Party B hereby orders from the Party A the following Securities:

  (i) the security bearing International Security Identification Number US4042Q1AA55, hereinafter "Instrument A"; and
  (ii) all securities having present or future inclusion in Schedule A of this Agreement.

(b) Instrument A and all securities having present or future inclusion in Schedule A of this Agreement, which Party A provides to Party B have collective reference herein as the "Securities".

## Article 2
### Scope

(a) The parties, being bound to the terms and conditions put forth herein, hereby agree to follow international customary professional practices, including, yet not limited to, the 2010 edition of the UNIDROIT Principles of International Commercial Contracts and the Uniform Customs and Practice for Documentary Credits 600 of the International Chamber of Commerce Paris.

(b) The Party A will provide access to Securities to Party B, and Party B shall acquire Securities from Party A for the purpose of facilitating investment activity, in the interest of raising capital for commercial and humanitarian projects.

(c) Investment funds arising from Instrument A, shall be in the form of a securities based line of credit arranged by Party B.

(d) Party A shall have no right, entitlement and interest in the use of the securities based line of credit arranged by Party B.



## Article 3
### Delivery of Documents

(a) After signing this Agreement and receiving the Administrative Fee, Party A shall:

  (i) reserve the Securities; and
  (ii) send Party B all documentation requested for Party B's bank officer to check and authenticate the Securities.



## Article 4
### Commencement

(a) This Agreement shall commence, under the terms and conditions hereof, upon the Parties signing hereunder.

(b) Party B shall transfer to Party A the sum of EUR 50,000.00, hereinafter Administrative Fees, to cover the costs of the Party A making available the Securities.

(c) After receiving the Administrative Fees Party A shall:

   (i) make available the Securities;
   (ii) within one, 1, banking day, of presentment, sign and submit all documentation in relation to the opening and operation of the Account Party B opens for the purpose of receiving Securities from Party A; and
   (iii) transfer Instrument A within three, 3, banking days of the Account opening;

Party B shall:

   (i) place funds arising from the monetization of the Securities, into investments of Party B's sole discretion;
   (ii) open the Account for the purpose of receiving Securities from Party A, herein the Account and include Party A as an authorized user of such Account for the sole purpose of facilitating the reception of Securities;

   (1) Party A shall only have the authority to deposit investment grade securities into the Account and be restricted from all other banking authority on the Account, including but not limited to initiating outgoing transfers of any kind, adding or removing authorized representatives to the Account, adding or removing features to and from the Account and transferring, as well as, closing the Account; and

   (iii) on the same banking day Party B receives, from Party A, Securities, Party B shall send funds, in the form of cash and in the amount agreed upon between Party A and Party B, to Party A.

   (1) All amounts Party A receives from Party B, for providing Securities, will be listed within Schedule A attaching hereto.

## Article 5
### Substitution of Securities

(a) In the event any Security is not acceptable to the bank at which the Account is held, Party A shall, immediately upon request by party B, deposit into the Account, an investment grade security, acceptable to such bank, to replace such Security.

(j)  The rate Party B issues to Party A for providing a replacement Security shall be renegotiated between the Parties and attach to this Agreement in the form of an Addendum, bearing the signature of the Parties.

## Article 6
## Party B's Right to Terminate the Agreement

(a)  Party B may terminate this Agreement at any time, by sending notice to Party A.

(b)  Within five, 5, banking days, Party B shall settle all amounts, arising hereunder, Party A holds entitlement to, in the event of Party B's termination of this Agreement.

## Article 7
## Party A's Warranties

(a)  The Party A hereby warrants and undertakes to Party B all of the provisions of this agreement along with all subsections of this Article, on a continuing basis.

(b)  Party A warrants that the Securities and all funds provided to the Party B shall be readily available for Party B's use and the Party B is able to freely and in Party B's sole discretion transfer, block, pledge, hypothecate, as well as, disburse such Securities and funds for investment purposes.

(c)  Unless other banking authority and power is granted in prior writing by Party B, Party A warrants to only deposit investment grade securities into the Account and to never exercise any other banking authority on the Account, including but not limited to initiating outgoing transfers of any kind, adding or removing authorized representatives to or from the Account, adding or removing features to or from the Account and transferring, as well as, closing the Account.

(d)  Party A warrants that, to the best of Party A's knowledge, no provision of this Agreement is in violation of or contradicts any agreement or contract between Party A and any bank or banking authority Party A holds a relationship with.

(e)  Party A warrants to be completely aware of the terms and conditions of this Agreement, as well as, the Account.

(f)  Party A warrants to accept the Administrative Fee upon presentment from Party B.

(g)  Party A warrants the Securities and any form of value arising therefrom, when issued to Party B, shall be marginable, free of any blocks, holds and impediments and readily available to Party B and under Party B's sole discretion and use without limitation.

(h)  Party A warrants that the provisions put forth under Article 4(c)(iii) shall occur within three, 3, banking days of receiving the Account opening.

Global Master Securities Lending and Borrowing Agreement Second Amendment

(i) Party A warrants that the delivery of the documents as per article 4(c)(ii), will be done in within one, 1, banking day of any request put forth by Party B and in accordance with any directives of Party B's election.

## Article 8
### Party B's Warranties

(a) The Party B hereby warrants and undertakes to the Party A all of the provisions of this agreement along with all subsections of this Article, on a continuing basis.

(b) Party B is obligated to observe due care when using the Securities.

(c) Party B warrants that no provision of this Agreement is in violation of or contradicts any agreement or contract between Party B and Party B's bank.

(d) Party B warrants being completely aware of the terms and conditions of this Agreement, also being under future verification by the Parties Bank Officers.

(e) Party B warrants Party B shall transfer the Administrative Fees to Party A.

(f) Party B shall designate a bank, for the provisions arising under Article 4(d)(ii).

 (1) Such designation shall be in the form of a notice, being governed by all provisions of Article 12 hereunder.

(g) Party B warrants that Party B shall, on the same banking day Party B receives, from Party A, Securities, Party B shall send funds, in the form of cash and in the amount agreed upon between Party A and Party B, evidenced within Schedule A, to Party A.

## Article 9
### Assignment of the Agreement

(a) This Agreement may not be assigned to any third party without prior written consent.

## Article 10
### Time

(a) Time is of the essence pertaining to this Agreement and this Agreement shall exist into perpetuity, unless otherwise terminated under Article (6) of this Agreement.

## Article 11
### Event of Default

(a) Non observance of any of the Articles herein will render this Agreement null and void.

(b) If the Party A defaults under the terms and conditions of this Agreement, Party A hereby agrees, undertakes and waives all rights to protest, to issue the amount of the Administrative Fees, within five, 5, banking days, of such event of default.

(c) If Party B defaults under the terms and conditions of this Agreement Party B, hereby agrees, undertakes and waives all rights of protest, shall forfeit, to Party A, all rights, entitlements and interest in the Administrative Fee to Party A.

## Article 12
### Notices

(a) Any notice or other communication in respect of this Agreement may be given in any manner set forth below:

(i) if in writing and delivered by courier, on the date it is delivered;
(ii) if sent by telex or by telegram, on the date of receipt of the recipient's answer;
(iii) if sent by certified or registered mail or the equivalent, being return receipt requested, on the date that mail is delivered or its delivery is attempted; and
(iv) if sent by electronic message, on the date of receipt of that electronic message.

## Article 13
### Severance

(a) If any provision of this Agreement is declared by any judicial or other competent authority to be void or otherwise non enforceable, that provision shall severe from the Agreement and the remaining provisions shall remain in full force and effect.

## Article 14
### Modification to Legislation

(a) Any reference in this Agreement to principles, acts, regulations or legislation shall include any modification or reenactment thereof from the time being in force.

## Article 15
### Miscellaneous

(a) This Agreement constitutes the entire agreement and understanding of the Parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

(b) Any person who is not a party to this Agreement has no right to enforce any provision arising under this Agreement.

(c) No amendment in respect of this Agreement will be effective unless in writing and signed by the Parties.

(d) Except as provided in this Agreement, the rights, powers, remedies and privileges provided in this Agreement are cumulative and not exclusive of any rights, powers, remedies and privileges provided by law.

(e) Any person who is not a party to this Agreement has no right to enforce any provision arising under this Agreement.

(f) The Parties agree that each may record all telephone conversation between them.

## Article 16
### Governing Law and Jurisdiction

(a) This Agreement is governed by, and shall be construed in accordance with, the Laws of the United States of America.

(b) In the event of any controversy or claim arising out of or relating to this Agreement, or a breach thereof, the parties hereto shall first attempt to settle the dispute by mediation.

(c) The administration of all mediations shall be by the American Arbitration Association, under its Mediation Rules.

(d) If, within sixty days after service of a written demand for mediation, settlement does not occur, any outstanding controversy or claim shall settle by means of arbitration, the administration of which shall be by the American Arbitration Association.

(e) The Commercial Arbitration Rules of the American Arbitration Association shall solely apply to any arbitration arising herefrom.

(f) The place of arbitration shall be in Las Vegas, Nevada or Washington, District of Columbia.

(g) The number of arbitrators shall be three.

(h) The judgment of the arbitrators rendering the award may enter any International, District, State, County, Municipal, or Justice court, as well as, any public record.

(i) The losing party in any dispute arising from this Agreement shall pay all and any expenses, incurred by the prevailing party in resolving such dispute.

[This space is intentionally blank]

This Amendment sets forth and constitutes the current understanding of the Parties with respect to the subject matter hereof; the terms of which have control over, as well as, supersedes any and all prior agreements, negotiations, correspondence, undertakings, promises, covenants, arrangements, communications, representations, and warranties, whether oral or written between the Parties; and is read, approved and underwritten by the Parties on the 31st day of December, 2015.

The Party A – EQUATION SOLUTION INC

Director – Francis R. Alvarez

| NAME: | FRANCIS ALVAREZ |
|---|---|
| TITLE: | Director |
| COMPANY: | EQUATION SOLUTIONS INC |
| PASSPORT: | EB1704494 |
| NATIONALITY: | Filipino |

The Party B – ROYAL INDUSTRIES INTERNATIONAL, LLC

| NAME: | MARK SEGOVIA |
|---|---|
| TITLE: | Authorized Representative |
| COMPANY: | ROYAL INDUSTRIES INTERNATIONAL, LLC |
| PASSPORT: | A2789591 |
| NATIONALITY: | Jamaican |

| NAME: | BLAKE KELLEY |
|---|---|
| TITLE: | Authorized Representative |
| COMPANY: | ROYAL INDUSTRIES INTERNATIONAL, LLC |
| Driver License: | D04471043 |
| NATIONALITY: | American |